# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>OYTUN AYSE MIHALIK. aka Ayse Oytun Akin,<br>aka Ayse Mihalik, aka "Cindy Palmer" | DOCKET NO.<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br>AUG 29 2011<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY DEPUTY<br><br>MAGISTRATE'S CASE NO.<br>11- 11-2014M |

Complaint for violation of Title 18, United States Code, Section 1001(a)(2)

| NAME OF MAGISTRATE JUDGE<br><br>FERNANDO M. OLGUIN | UNITED STATES MAGISTRATE JUDGE | LOCATION<br><br>Los Angeles, CA |
|---|---|---|
| DATE OF OFFENSE<br>August 8, 2011 | PLACE OF OFFENSE<br>Los Angeles, CA | ADDRESS OF ACCUSED (IF KNOWN) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about August 8, 2011, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI) and the Department of Homeland Security, Homeland Security Investigations (HSI), namely, an interview with Special Agents of the FBI and HSI at Los Angeles International Airport (LAX), defendant OYTUN AYSE MIHALIK also known as ("aka") Ayse Oytun Akin, Ayse Mihalik, and Cindy Palmer ("defendant MIHALIK"), knowingly and willfully made a material false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the government on the United States, in violation of 18 U.S.C. § 1001(a)(2).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>Siddhartha Patel          /S/<br><br>OFFICIAL TITLE<br>SPECIAL AGENT - Federal Bureau of Investigation |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br><br>*Frederick F. Mumm* | DATE<br><br>August 29, 2011 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.
Initials (JAH:nss)          REC: Detention

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Siddhartha Patel being duly sworn, hereby state the following under penalty of perjury:

**I. INTRODUCTION**

1.  (U) I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been so employed since March 2003. I am currently assigned to the Orange County Joint Terrorism Task Force (JTTF) at the Santa Ana Resident Agency of the FBI Los Angeles Field Division. Before joining the FBI, I graduated from Carnegie Mellon University with a Bachelor of Science degree in Industrial Management and a Master of Science degree in Public Policy and Management. During my time with the FBI, I have conducted numerous investigations into criminal activities, including investigations that involved individuals who sent money overseas, and individuals who made material false statements to federal agencies. As a result of my experience in these investigations, I am familiar with the motives, strategy, tactics, and methods of those engaged in these types of criminal activities. I have attended numerous trainings regarding international criminal activities. I have also worked with other

1

agencies involved in international investigations, traveled overseas in connection with sensitive matters, and interviewed individuals associated with international crimes.

2. (U) This affidavit is made in support of a criminal complaint charging OYTUN AYSE MIHALIK, aka Ayse Akin, aka Ayse Oytun Akin, aka Ayje Oytun Akin, aka Oytun Akin, aka Ayse Mihalik, aka Oytun A. Mihalik, aka Cindy Palmer (MIHALIK) with making a material false statement to a federal agency in a matter within the jurisdiction of the executive branch of the government of the United States, in violation of 18 U.S.C. § 1001(a)(2).

3. (U) The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various FBI agents and Task Force Officers. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and does not purport to set forth all of my knowledge of, or the government's investigation into, the matters described herein. Unless specifically indicated otherwise, I have recounted the conversations and statements described in this affidavit in substance and in part only. Furthermore, all dates set forth below are on or about the dates indicated.

II. SUMMARY OF PROBABLE CAUSE

4. On August 8, 2011, the FBI, an agency within the executive branch of the Government of the United States, was

conducting a criminal investigation. On the same date, August 8, 2011, as part of that investigation, federal agents interviewed MIHALIK. Among other questions, the federal agents asked MIHALIK whether she had ever sent money to anyone overseas using a name other than her own. MIHALIK responded by telling the federal agents that she had never sent money using any name other than her own. This statement was material and knowingly false. Documents obtained from Western Union establish that MIHALIK used the alias "Cindy Palmer" to send money on December 29, 2010 and January 11, 2011 to an individual in Pakistan (Pakistan Individual).[1]

### III. APPLICABLE STATUTE

5. Title 18, United States Code, Section 1001(a)(2) (False Statements to a Government Agency) provides "[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation . . . shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both."

---

[1] The use of the term "Pakistan Individual" is not meant to imply that the individual is a Pakistani national or of Pakistani descent. I refer to him as the "Pakistan Individual" because the evidence shows that MIHALIK is sending funds to an individual in Pakistan.

## IV.  AUGUST 8, 2011 INTERVIEW OF MIHALIK AT LAX AIRPORT

6.  On August 8, 2011, an FBI Special Agent and a Homeland Security Investigations (HSI)[2] Special Agent interviewed MIHALIK at the Los Angeles International Airport (LAX).  This interview was recorded, and subsequently transcribed.  During the interview, MIHALIK provided the following information:

a.  MIHALIK was returning from a six-month stay in her home country of Turkey.  MIHALIK departed the United States in mid-February and traveled to Istanbul, Turkey.  MIHALIK visited family in Istanbul, Turkey.  MIHALIK is a registered pharmacist, and worked at CVS pharmacy in Orange County, California, prior to leaving for Turkey in February 2011.  MIHALIK planned to resume her employment as a pharmacist at CVS.

b.  MIHALIK is a lawful permanent resident of the United States based on her marriage to her current husband.

7.  During the interview, MIHALIK made statements about sending money overseas as described further below:

a.  MIHALIK stated she sent money via Western Union and Moneygram to two different individuals overseas.

b.  MIHALIK stated approximately three years ago she made two or three wire transactions using the Moneygram wire service to a Turkish female named "Netica" in Istanbul, Turkey.

---

[2]  Homeland Security Investigations was known previously as Immigration and Customs Enforcement (ICE).

When asked how much money MIHALIK sent "Netica," MIHALIK stated "like 300, 500, 600...something like that..." and that "Netica" is the sister of a male Turkish friend of MIHALIK's named Arda.

      c.  MIHALIK stated she has only used Western Union on one occasion to send money to an individual overseas.  When asked the name of this individual, MIHALIK responded, "Hold on, oh shoot...cause it's not my friend...I don't even know honestly.  Eh, this one is my, her sister... my friend... I know, but I don't know his friend...Ehh, Natullah something...I forgot.  Ne, Ne, Natullah?."

    8.  When MIHALIK was asked during the interview how much she sent to Natullah, she made the following statements:

> MIHALIK: ... last year.  Eh, I don't remember how much...maybe like, how much...600, 700, 500, 7...something like that.
>
> AGENT: About 6 or 700, alright.
>
> MIHALIK: Yeah.
>
> AGENT: How many times did you send it there?
>
> MIHALIK: One time.
>
> AGENT: One time, okay.  Gotcha.  And what was the purpose of that transfer?
>
> MIHALIK: They...no, it was a family friend as I said that needed the money.  So we send the money to them.
>
> AGENT: Okay, what did they need the money for?
>
> MIHALIK: They...financial problems, you know other things, you know

AGENT:       Okay, gotcha. And how did you find out about that, that person needed the money? Um...somebody...Who told you to send the money to them?

MIHALIK:     They called...

AGENT:       That person?

MIHALIK:     They called, they called...

AGENT:       Natullah?

MIHALIK:     No, they called, they called up first of all they called me, you know they said you know they needed the money and stuff, sure yeah I mean actually I always give money but not using Moneygram or stuff like that, mostly you know I give...

9.   Later in the interview, when MIHALIK was asked if Natullah was a male or female, MIHALIK made the following statements:

AGENT:       Gotcha, gotcha. What about the, the other um...was it Natullah? Is that a girl or a guy?

MIHALIK:     No, that's, that's eh, that's, that's a family I don't really know too much.

AGENT:       You don't know if it's a guy or a girl?

MIHALIK:     No, no...it should be a lady...but uh, thing is I know (unintelligible)

AGENT:       Okay...did you talk to that person directly? Or uh...

MIHALIK:     Yeah, I, I...yeah I spoke to them. I yeah, I spoke to them. I spoke to them.

AGENT:       Phone? Or Internet? Or...

MIHALIK:     Yes, both...yeah

10. During the interview, MIHALIK explained that her legal name in the United States is Oytun A. Mihalik, and this is the name that she uses for financial documents, such as bank accounts and credit card companies. In addition, MIHALIK made the following statements regarding her use of aliases:

| | |
|---|---|
| AGENT: | Gotcha, so for your uh, like for banking, your bank statements?.... |
| MIHALIK: | Yeah, all of them like that. |
| AGENT: | It's all these?  (The AGENT referred to a piece of paper with her known aliases). |
| MIHALIK: | Yeah. |
| AGENT: | So when you, like for example when we were talking about the wire transactions and stuff overseas... |
| MIHALIK: | Yeah, my name. |
| AGENT: | Well what name would you have used for, for like the wire transactions and all that? |
| MIHALIK: | My name...Oytun, yeah. |
| AGENT: | Oytun Mihalik. |
| MIHALIK: | I don't, I don't...I don't use Ayse too much... |
| AGENT: | Okay |
| MIHALIK: | ...my dad used to say Ayse when I was little, but you know eh...he doesn't, he doesn't say it anymore. |
| AGENT: | So when you use, when you've used Moneygram or Western Union you've never... |
| MIHALIK: | Yeah, Oytun...Yeah, Oytun... |
| AGENT: | ...you've never used any other names? |

7

    MIHALIK:  No, my...no

    AGENT:    ...to send money in, in these... right?

    MIHALIK:  No, my name...just my name, uh huh.

11. At no time during the interview did MIHALIK ever say that she had used the name "Cindy Palmer."

## V.  WESTERN UNION EVIDENCE

12. I have reviewed financial records obtained from Western Union. Based on these records and other information I have reviewed from the investigation, I believe that MIHALIK transferred money three times -- on December 21, 2010, December 29, 2010, and January 11, 2011 -- to Pakistan Individual, and that she used the alias "Cindy Palmer" on two of these transfers. From my review of the Western Union records, I know the following about these transfers:

    a. On December 21, 2010, at the Western Union money transfer center located at Ralph's Grocery store #115, 6080 Ball Road, Buena Park, California, at approximately 6:23 p.m., MIHALIK, using the name "Oytun Mihalik," sent USD-$750.00 to a person in Pakistan, the individual referenced in this affidavit as Pakistan Individual. The Western Union receipt for this transaction memorializes that MIHALIK provided telephone number (212) 444-8946 as her contact phone number.[3] The signature on

---

[3] Records obtained from Verizon Wireless show that telephone number (212) 444-8946 is a cellular telephone number registered to MIHALIK's spouse. During a law enforcement

the Western Union receipt is "Oytun Mihalik."

  b. On December 29, 2010, at the Western Union money transfer center located at Ralph's Grocery store #115, 6080 Ball Road, Buena Park, California, at approximately 10:20 p.m., MIHALIK, using the name "Cindy Palmer," sent USD-$600.00 to a person in Pakistan, the individual referenced in this affidavit as Pakistan Individual. The Western Union receipt for this transaction evidences that MIHALIK provided telephone number (562) 325-1654 as her contact phone number.[4] Although the sender's name on the Western Union receipt is "Cindy Palmer," the signature on the Western Union receipt, below the printed name "Cindy Palmer," is "Oytun Mihalik."

  c. On January 11, 2011, at the Western Union money transfer center located at Ralph's Grocery store #249, 5420 La Palma Ave, La Palma, California, at approximately 10:46 p.m., MIHALIK, using the name "Cindy Palmer," sent USD-$700.00 to a person in Pakistan, the individual referenced in this affidavit as Pakistan Individual. The Western Union receipt for this transaction evidences that MIHALIK provided telephone number

---

interview on August 8, 2011, MIHALIK provided (212) 444-8946 as her personal cellular telephone number. Airline records provided by American Airlines show that MIHALIK provided (212) 444-8946 as her contact telephone number.

 [4] Information provided by Verizon Wireless indicates that (562) 325-1654 was registered to another individual, not MIHALIK, from April 23, 2008, to July 5, 2011. Verizon Wireless indicates no records showing that (562) 325-1654 was registered to MIHALIK.

9

(562) 344-2859 as her contact phone number.[5] The signature on the Western Union receipt, below the printed name "Cindy Palmer" is "Cindy Palmer."

## VI. ADDITIONAL PROBABLE CAUSE INFORMATION

13. American Airline passenger records reviewed on August 21, 2011, showed a flight reservation for MIHALIK, departing Los Angeles International Airport on Friday, August 26, 2011, at 7:55 p.m. for Istanbul, Turkey, via London, United Kingdom. The records showed MIHALIK to be flying alone, and not to have a return flight reservation. MIHALIK did not take this flight.

14. On August 26, 2011, at approximately 9:00 a.m., MIHALIK and her spouse came to the Santa Ana, California, HSI office for a previously-scheduled interview that was scheduled, and that MIHALIK agreed to attend, after the August 8, 2011 interview at LAX. During this interview on August 26, 2011, Special Agents with the FBI and HSI interviewed MIHALIK and her spouse about the nature of their marriage. (MIHALIK's permanent residency status was predicated on her marriage to her current spouse and there were, and are, questions about the legitimacy of that marriage.) During the interview, MIHALIK agreed to return to the HSI office on September 8, 2011, for another interview at which time she would supply additional documentation pertaining to her previous

---

[5] Information provided by U.S. TelePacific Corporation indicates that (562) 344-2859 is a telephone number which is not currently registered to anyone.

marriage and establishing the legitimacy of her current marriage.

15. On August 27, 2011, MIHALIK went to LAX, at which time she provided the following information to federal agents. MIHALIK told the agents that she was planning to leave the Los Angeles, California area and travel to Instanbul, Turkey via an international flight; that she had the intention of leaving the United States permanently and relocating to Turkey; and that she did not tell her husband that she was leaving for Turkey, but did call him on her cellular telephone from LAX to say goodbye.

## VII. CONCLUSION

16. Based on my training and experience, and the facts contained in this affidavit, I believe that there is probable cause to believe that OYTUN AYSE MIHALIK, aka Ayse Akin, aka Ayse Oytun Akin, aka Ayje Oytun Akin, aka Oytun Akin, aka Ayse Mihalik, aka Oytun A. Mihalik, aka Cindy Palmer (MIHALIK) made a

//
//
//
//
//
//
//
//
//

material false statement to a federal agency in a matter within the jurisdiction of the executive branch of the government of the United States, in violation of 18 U.S.C. § 1001(a)(2).

_____
Siddhartha Patel
Special Agent, FBI

Subscribed to and sworn to before me this 29th day of August 2011.

_Frederick F. Mumm_
_____
THE HONORABLE FERNANDO M. OLGUIN
United States Magistrate Judge
Central District of California